[Cite as *Yockey v. Best Buy Co., Inc*, 2014-Ohio-4330.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

LOUISE YOCKEY, et al.

     Appellants

     v.

BEST BUY CO., INC.

     Appellee

C.A. No.     13CA0027

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     12-CV-0490

DECISION AND JOURNAL ENTRY

Dated: September 30, 2014

BELFANCE, Presiding Judge.

{¶1} Plaintiffs-Appellants Louise and Larry Yockey appeal from the judgment of the Wayne County Court of Common Pleas granting summary judgment in favor of Defendant Best Buy Co., Inc. For the reasons set forth below, we reverse.

I.

{¶2} On the afternoon of March 2, 2009, husband and wife, Mr. and Mrs. Yockey visited the Wooster Best Buy to return a printer. To enter the store, they had to pass through a set of automatic doors with tinted glass into a vestibule area. They had to then turn to the right whereupon they encountered another set of automatic glass doors that opened into the main part of the store. There was a rug in the vestibule area of the store. Mr. Yockey carried the printer and walked into the store 3-5 steps ahead of Mrs. Yockey. When Mrs. Yockey entered the vestibule area, she immediately tripped on the rug, fell, and broke her hip. Upon hearing his

wife scream, Mr. Yockey looked back, saw his wife on the ground, and noticed several ripples in the rug.

{¶3} In June 2012, Mr. and Mrs. Yockey re-filed a complaint against Best Buy alleging that Best Buy's negligence caused Mrs. Yockey's injuries and, in addition, that Mr. Yockey suffered a loss of consortium as a result of Best Buy's negligence. Best Buy filed a motion for summary judgment, asserting that the hazard was open and obvious and, thus, Best Buy owed no duty. The Yockeys opposed the motion; however, the trial court awarded summary judgment to Best Buy. The Yockeys have appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR BEST BUY WHERE THERE EXIST GENUINE ISSUES OF MATERIAL FACT THAT MADE SUMMARY JUDGMENT WHOLLY INAPPROPRIATE.

{¶4} In the Yockeys' sole assignment of error they maintain that the trial court erred in granting summary judgment to Best Buy because genuine issues of material fact remain with respect to whether the ripples in the rug were open and obvious. We agree.

{¶5} In reviewing a trial court's ruling on a motion for summary judgment, "[w]e apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 293, quoting Civ.R. 56(E).

{¶6} "To prevail in a negligence action, the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 21. "The owner or occupier of premises is not an insurer of the safety of his invitees, but he does owe a duty to exercise ordinary or reasonable care for their protection." *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359 (1979). "This includes the duty to warn patrons of dangerous conditions known to, or reasonably ascertainable by, a proprietor which a patron should not be expected to discover or protect himself against." *Id*. There is no dispute that Mrs. Yockey was an invitee of Best Buy.

{¶7} "The owner must protect the business invitee by maintaining the premises in a safe condition. Yet, an owner owes no such duty to a business invitee when the danger at issue is open and obvious." (Internal quotations and citations omitted.) *Baker v. Bob Evans Farms, Inc.,* 9th Dist. Wayne No. 13CA0023, 2014-Ohio-2850, ¶ 10. "An open and obvious danger acts as a complete bar to any negligence claims * * *[; h]owever, where a danger is not open and obvious, an owner owes a duty * * * to warn any invitees of latent or concealed defects of which the [owner] has or should have knowledge." (Internal quotations and citations omitted.) *Id.*

{¶8} We analyze "the totality of the circumstances to determine if the danger is open and obvious as a matter of law. Thus, the issue before us is whether, considering the totality of

the circumstances, a genuine issue of material fact exists regarding whether a reasonable person would have discovered the [hazard,] i.e. whether that hazard was open and obvious." (Internal quotations and citations omitted.) *Tucker v. Dennis Baughman,Co., Ltd.,* 9th Dist. Summit Nos. 26620 & 26635, 2014-Ohio-2040, ¶ 15. In so doing, we consider "both the nature of the dangerous condition and any attendant circumstances that may have existed at the time of the injury." (Internal quotations and citation omitted.) *Baker* at ¶ 11. "Attendant circumstances include any distraction that would come to the attention of a [person] in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." (Internal quotations and citations omitted.) *Id.* "'Not surprisingly, whether a particular danger is open and obvious depends heavily on the particular facts of the case.'" *Tucker* at ¶ 15, quoting *Hissong v. Miller,* 186 Ohio App.3d 345, 2010-Ohio-961 (2d Dist.), ¶ 10.

{¶9} The Yockeys in their complaint asserted that Mrs. Yockey "tripped over the rippled and bunched up rug and fell." They further alleged that Best Buy "knew or should have known of [the] rug inside the entrance of the store which had become rippled and bunched up, thereby creating a dangerous condition for business invitees of this store."

{¶10} Mr. and Mrs. Yockey went to Best Buy on the afternoon of March 2, 2009, to return a printer that Mrs. Yockey did not like. The Yockeys had been to this particular Best Buy store on many occasions prior to this visit. Mr. Yockey indicated that he knew his wife walked in behind him, but he could not say how far behind him she was. Mrs. Yockey testified that she was approximately 3-5 steps behind him. To enter the store, patrons have to pass through a set of automatic doors with tinted glass into a vestibule area. They have to then turn to the right whereupon they encounter another set of automatic glass doors that open into the main part of the store. At the time of the accident, there was a rug in the vestibule area of the store. Pictures

documenting the appearance of the Best Buy entrance were included in the summary judgment materials which evidence the tinted nature of the exterior glass.

{¶11} Describing the entryway to the store, Mr. Yockey stated that, "[t]he doors fly open; I just walked in. And then other doors fly open, and I turned this way, and the guy put a sticker on [the printer], because I was returning something." Mr. Yockey then heard Mrs. Yockey yell, and he turned and saw "her going down" and asked her what she was doing. Mrs. Yockey told him that she "tripped over that rug." Upon looking at the area where Mrs. Yockey fell, Mr. Yockey then noticed the rug in the vestibule area. Mr. Yockey stated that the rug "was in shambles [and] had about three or four loops." Prior to seeing his wife on the ground, neither Mr. or Mrs. Yockey had noticed the rug or the loops in it. However, Mr. Yockey stated that nothing was covering the rug and that one could have seen the rug if one was looking for it. Both Mr. and Mrs. Yockey testified that they did not believe that they created the ripples in the rug.

{¶12} Mrs. Yockey testified that, as she was walking in behind her husband, she noticed the red washer and dryer and "signs all over the place." As they had been to the Best Buy on numerous occasions before, Mrs. Yockey indicated that she had seen this particular washer and dryer previously. Mrs. Yockey testified that the doors to the store "just open up, and you walk in." She further stated that, on this occasion, she "just walked in the door when they opened." She indicated that she was not looking at the ground as she walked in, and, instead, was "look[ing] at all the signs[.]" She stated that she fell during "the first basic step" going into the vestibule area. She tried to catch herself on the washer and dryer but was unable to do so.

{¶13} Thomas Piper, who at the time of the accident was an asset protection associate at Best Buy, was working the day Mrs. Yockey was injured. He was stationed at the counter

immediately adjacent to the second set of automatic doors near the store entrance. His job duties included, "catch[ing] shoplifters, contact[ing] customers when they needed help, to make sure no trip hazards were occurring at the time, make sure * * * the sidewalk outside was * * * salted in the wintertime," and to tag items being returned. In addition, he would announce "hot zone checks" which would require employees in different areas to check for shoplifters and to look for safety issues in their areas. While not specifically required of him, outside of the hot zone checks, Mr. Piper would go out into the vestibule area every 15 to 20 minutes to check the rug and make sure there were no rolls in it and to sweep up the area. He acknowledged that the rug in that area would periodically get ripples and rolls in it and that it was a common problem. Mr. Piper testified that he remembered checking the rug "right before [Mrs. Yockey] walked in." At that time, he did not notice anything wrong with it and so he "took [his] foot, wiped it, ma[d]e sure it's okay and then [] went back inside." The customer experience manager at the time of the accident, Nathan Bryant, testified that checking the vestibule area during a hot zone check would have been the responsibility of the asset protection person. Mr. Bryant testified that he did not notice anything out of place with the rug upon coming to the area following Mrs. Yockey's fall.

{¶14} Considering the entirety of the summary judgment materials, and viewing them in light most favorable to the Yockeys, we conclude that the trial court erred in concluding the hazard Mrs. Yockey encountered upon entering the vestibule was open and obvious as a matter of law. This Court determines a genuine dispute of material fact remains with respect to whether the hazard was open and obvious.

{¶15} Best Buy and the trial court relied primarily on this Court's opinion in *Alfonso v. Marc Glassman, Inc.,* 9th Dist. Summit No. 24604, 2009-Ohio-5149, in concluding that the

condition of the rug was open and obvious. However, the facts of this case are distinguishable from those in *Alfonso*. Ms. Alfonso fell after taking a couple steps on the rug/carpet at issue, *see id.* at ¶ 14, whereas Mrs. Yockey immediately fell upon taking her first step into the vestibule. Further, there was evidence in the record in *Alfonso* that the hump in the carpet was visible to the average person walking into the store. *See id.* at ¶ 15. In the instant matter, there was no testimony from anyone walking behind Mrs. Yockey concerning the state of the rug at the time Mrs. Yockey fell. Instead, here, the record evidences that Mrs. Yockey was following her husband into the store and that he successfully navigated the entryway without observing anything about the rug. Finally, there was nothing in *Alfonso* that indicated that there was tinted glass at the entranceway to Marc's, whereas the record in this matter is clear that outside glass of Best Buy is tinted.

{¶16} The fact that there was nothing obscuring the rug or that the rug itself would have been visible if the Yockeys had been looking down is not dispositive of whether the ripples in the rug would have been observable to Mrs. Yockey as she was walking in the store. Given that the glass of the Best Buy entryway was tinted and that Mrs. Yockey fell immediately upon entering the vestibule area, it is not clear that the ripples would have been open and obvious to Mrs. Yockey. Given the totality of the circumstances and viewing them in a light most favorable to the Yockeys, we conclude that there remains a dispute of fact with respect to whether the hazard presented by the rug was open and obvious. *See Tucker,* 2014-Ohio-2040, at ¶ 15 ("[T]he issue before us is whether, considering the totality of the circumstances, a genuine issue of material fact exists regarding whether a reasonable person would have discovered the [hazard,] i.e. whether that hazard was open and obvious."). Summary judgment based upon the open and obvious doctrine was, therefore, inappropriate.

**{¶17}**  In light of the foregoing, we sustain the Yockeys' assignment of error.

III.

**{¶18}**  The judgment of the Wayne County Court of Common Pleas is reversed.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶19}  I do not believe the Plaintiff raised any issue of fact in this case sufficient to find

it materially distinguishable from *Alfonso* or *Smock v. Bob Evans Farms, Inc.*, 9th Dist. Lorain

No. 02CA008075, 2003-Ohio-832.  I, therefore, would affirm the judgment of the trial court.

APPEARANCES:

J. JEFFREY HECK, Attorney at Law, for Appellants.

TODD A. GRAY and JEFFREY E. DUBIN, Attorneys at Law, for Appellee.