SCHRAFFENBERGER et al., Appellants,

v.

PERSINGER, MALIK AND HAAF, M.D.s, INC. et al., Appellees.

[Cite as *Schraffenberger v. Persinger, Malik & Haaf, M.D.s, Inc.* (1996), 114 Ohio App.3d 263.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950868.

Decided Sept. 25, 1996.

*Lucian J. Bernard*, for appellants.

*Mark J. Huller*, for appellees.

MARIANNA BROWN BETTMAN, Presiding Judge.

In November 1992, defendant-appellee Dr. Courtney Persinger performed a bilateral vasectomy on plaintiff-appellant Keith Schraffenberger. Schraffenberger signed an informed consent form before he had the vasectomy. The form, which was prepared by Persinger or his staff, states that the patient understands that the operation is intended to result in sterility but that sterility is not guaranteed. The form categorically states that "I understand that a sterile person is NOT capable of becoming a parent." It further provides that the patient acknowledges being advised to submit two negative sperm specimens at least six weeks apart "before I can consider that the operation has resulted in sterility." The form concludes by advising the patient to have a follow-up semen

analysis done six to eight months "after the initial sperm tests have shown the operation to be successful."

Prior to Keith's operation, the Schraffenbergers listened to a message recorded by Persinger or someone in his office. The tape informed the Schraffenbergers that the vasectomy procedure could not be one-hundred-percent guaranteed because, on rare occasions, the channels which carry spermatozoa spontaneously reunite. It further provided:

"You are told that you are not sterile until we have checked two consecutive sperm specimens that do not contain sperm cells. Four to six weeks after the surgery we will frequently find an occasional dead sperm. You will be advised to continue to submit more sperm specimens until no sperm cells are seen. After the second sperm specimen has been reported as sterile, you will still be advised to bring another specimen into the office four to six months after the initial operation."

Over six weeks after his operation, Schraffenberger returned to Persinger's office for a semen analysis. A little over two weeks later, he returned for his second follow-up visit. On both occasions, Persinger found no spermatozoa in Schraffenberger's semen.

Following the second semen analysis, Schraffenberger phoned Persinger's office for the result of his test and was informed that he was sterile. It is undisputed that someone from the doctor's staff used the word "sterile" when conveying Schraffenberger's test results to him.

Before Schraffenberger's third test was due to be performed, his wife, Lisa, discovered she was pregnant. Thereafter, Schraffenberger returned to Persinger's office and Persinger discovered many mobile, live sperm in Schraffenberger's semen. Plaintiff-appellant Lisa Schraffenberger gave birth to a healthy child some months later.

Thereafter, the Schraffenbergers filed suit against Persinger and Persinger, Malik and Haaf, M.D.s, Inc. (collectively, "appellees"), alleging negligence in performance of the vasectomy procedure, negligence in analysis of Schraffenberger's semen, negligence in the communication of the result of the second semen analysis, and promissory estoppel. The lower court entered summary judgment in favor of appellees on all claims on the ground that the Schraffenbergers failed to present any expert testimony in support of their case. This timely appeal followed.

In their sole assignment of error, the Schraffenbergers contend that the lower court erred by entering summary judgment against them on the issues of

negligent communication and promissory estoppel.[1]

When reviewing a ruling on a motion for summary judgment, this court examines the record *de novo* and applies the standard set forth in Civ.R. 56. *Koos v. Cent. Ohio Cellular* (1994), 94 Ohio App.3d 579, 641 N.E.2d 265. Summary judgment is appropriate where there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). It must appear, with the evidence viewed in a light most favorable to the nonmoving party, that reasonable minds can come to but one conclusion and that the conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*

In general, to support a medical malpractice claim,[2] a plaintiff must produce expert testimony demonstrating the applicable standard of care and breach of it. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673. There is an exception to this rule, however, where issues are presented that are "within the comprehension of laymen" requiring "only common knowledge and experience" to resolve. *Bruni, supra,* 46 Ohio St.2d at 130, 75 O.O.2d at 186, 346 N.E.2d at 673.

The Schraffenbergers are not arguing that the actual vasectomy or the follow-up tests were performed negligently. Expert testimony clearly would be required to support either of these contentions. Instead, the Schraffenbergers contend that appellees negligently advised them that Keith was sterile. The issue, here, is whether a reasonable person would have engaged in unprotected sexual relations after being informed over the telephone by a member of the doctor's staff that he was sterile, given the information received from the informed consent form and the recording. This, certainly, is a question "within the comprehension of laymen" requiring "only common knowledge and experience" to resolve. *Bruni,* 46 Ohio St.2d at 130, 75 O.O.2d at 186, 346 N.E.2d at 673. We find this case to be akin to an informed consent case, but one in which the information conveyed and the patient's understanding of that information continues beyond the surgical procedure itself. While expert testimony may be used, it is not required. See, generally, *Valerius v. Freeman* (Oct. 19, 1994), Hamilton App. No. C–930658, unreported, 1994 WL 570289 (where patient alleges lack of informed consent, the issues of whether doctor did or did not discuss material risks and whether a reasonable person in the position of patient would

---

1. The Schraffenbergers have abandoned their claims that the vasectomy and the follow-up tests were performed negligently.

2. Although the Schraffenbergers refer to this cause of action as "negligent communication," we find that this is a medical claim. See *Rome v. Flower Mem. Hosp.* (1994), 70 Ohio St.3d 14, 635 N.E.2d 1239 (adopting broad definition of "medical claim" as used in R.C. 2305.11).

have chosen not to have the treatment had the material risks been disclosed are questions of fact for the jury for which expert testimony may be utilized but is not required).

■ We thus hold that the absence of expert testimony does not defeat this claim, and summary judgement was erroneously granted on this basis. On the state of the record, in light of the language in the form and the language on the tape, there exists a genuine issue of material fact on what was meant by the word "sterile" in the telephone call, and whether it was reasonable for the Schraffenbergers to have had unprotected sexual relations after receiving the information which they did.[3]

■ The Schraffenbergers also assert that the trial court incorrectly subsumed their claim of promissory estoppel into their malpractice claims. We disagree. As stated above, this is a medical claim, and promissory estoppel is not cognizable in this context. See *Rome, supra; Burnside v. Leimbach* (1991), 71 Ohio App.3d 399, 403–404, 594 N.E.2d 60, 62–63; cf. *Muir v. Hadler Real Estate Mgmt. Co.* (1982), 4 Ohio App.3d 89, 90, 4 OBR 170, 171–172, 446 N.E.2d 820, 822. Consequently, we hold that this argument is without merit.

Therefore, the judgment of the trial court is affirmed as to the promissory estoppel claim and reversed on the "negligent communication" medical claim. The cause is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

DOAN and HILDEBRANDT, JJ., concur.

---

3. While we express no opinion as to the merits of the Schraffenbergers' claim, we note that if the Schraffenbergers ultimately prevail, the damages they may recover are quite limited. See *Johnson v. Univ. Hosp. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370, paragraph two of the syllabus.